UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DENNIS N. HIATT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-00182 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Dennis Hiatt filed a complaint seeking review of the final decision of the

Commissioner of Social Security denying his application for social security disability benefits.

[DE 1]. The matter is fully briefed and ripe for decision. [DE 16, 17]. For the reasons stated

below, the Court remands this matter to the Commissioner for further proceedings.

**I. FACTUAL BACKGROUND**

On October 15, 2015, Mr. Hiatt filed an application for disability insurance benefits and

on January 26, 2016, he filed an application for supplemental insurance benefits. In both, he

claimed his disability began May 10, 2014. His claim was denied initially and upon

reconsideration. On August 30, 2017, Mr. Hiatt participated in a hearing before an ALJ without

representation. The ALJ issued an unfavorable decision denying his disability benefits and

concluded that Mr. Hiatt was not disabled under the Social Security Act because he had the

residual functional capacity that allowed him to perform work in the economy. The Appeals

Council denied Mr. Hiatt's request for review, after which he filed this appeal. *See Schomas v.*

1

*Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Mr. Hiatt seeks review of the Commissioner's

decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

At the hearing in front of the ALJ, Mr. Hiatt, his wife, and a vocational expert ("VE")

testified. Before any testimony began, the ALJ explained to Mr. Hiatt his options regarding his

right to representation by an attorney or non-attorney. (R. 210–15). The ALJ explained that "a

representative can present your evidence in a way that is most favorable to your case." (R. 211).

She further explained that representation can help gather information, including medical and

non-medical evidence. *Id.* The ALJ advised that some legal service organizations provide legal

representation free of charge if certain qualifying criteria are met or for a fee if approved by the

ALJ. *Id.* Mr. Hiatt was provided a referral list of organizations and the ALJ offered to postpone

the hearing to give him additional time to obtain representation if he preferred. (R. 212).

Following a few questions from Mr. Hiatt, he waived his right to representation. (R. 41–42, 214–

15).

The ALJ questioned Mr. Hiatt about outstanding medical records. The ALJ indicated that

the last treatment records she had was from October 2015 and asked Mr. Hiatt about his medical

treatment since then. Mr. Hiatt informed the ALJ that he had switched networks from Lutheran

to Parkview network and has received treatment for various ailments since October 2015. Mr.

Hiatt provided names of some doctors and a chiropractor that he has seen. (R. 216–17). Mr. Hiatt

told the ALJ she "should" have all the records from Lutheran already. (R. 237). Mr. Hiatt

explained that he sees a chiropractor weekly, he has been seeing a gastrointestinal specialist

(stomach issues), a neurologist (possible seizures), a general practitioner, and has been receiving

mental health treatment at Bowen Center. (R. 217–19, 236).

Mr. Hiatt prepared a statement that he read into the record. (R. 220–28). He testified that he has been diagnosed with degenerative disc disease, spinal stenosis, fibromyalgia, chronic insomnia, sleep apnea, severe major depressive disorder, PTSD, and his doctor is concerned he is having seizures. (R. 221). Mr. Hiatt testified that these conditions and the chronic debilitating pain impact him every day and limit his quality of life. *Id.* Mr. Hiatt testified to having difficulty with showering, eating a meal after he prepares it, concentrating because of the pain and fatigue, and flashbacks and panic attacks relating to his PTSD. (R. 221–22, 226).

The ALJ then questioned Mr. Hiatt regarding his ability to interact and care for his toddler daughter. (R. 228–30).  Next she questioned him on his employment history and the reasons why some jobs ended. (R. 230–36). The ALJ asked how much weight he carried at these previous jobs. *Id.* Mrs. Hiatt testified, reiterating everything her husband stated because she sees it every day. (R. 239–41). She testified that Mr. Hiatt cannot always lift their daughter who is about 30 pounds. (R. 240). The ALJ did not ask her any questions. The ALJ provided a hypothetical question to the VE, which ultimately became the basis for Mr. Hiatt's residual functional capacity, who testified that there were jobs in the national economy that the hypothetical individual could perform. (R. 244–46).

## II. STANDARD OF REVIEW

Because the Appeals Council denied review of the ALJ's decision, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas*, 732 F.3d at 707. This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about

the disability status of the claimant, the Court must affirm the Commissioner's decision so long

as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent

findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this

substantial-evidence determination, the Court considers the entire administrative record but does

not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's

own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539

(7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before

affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the

claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line

of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.

2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an

adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to

address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge"

between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability

under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential

evaluation process to be used in determining whether the claimant has established a disability. 20

C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1.      Whether the claimant is currently engaged in substantial gainful activity;

2.      Whether the claimant has a medically severe impairment;

3.      Whether the claimant's impairment meets or equals one listed in the regulations;

4.      Whether the claimant can still perform relevant past work; and

5.      Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of

impairments meets or equals an impairment listed in the regulations, disability is acknowledged

by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or

equaled, then in between steps three and four, the ALJ must then assess the claimant's residual

functional capacity ("RFC"), which is defined as the most a person can do despite any physical

and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

The ALJ then uses the residual functional capacity to determine whether the claimant can

perform his or her past work under step four and whether the claimant can perform other work in

society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps

one through four, while the burden shifts to the Commissioner in step five to show that there are

a significant number of jobs in the national economy that the claimant is capable of performing.

*Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### IV. DISCUSSION

Mr. Hiatt offers two arguments for remand: 1) the ALJ erred by breaching her heightened duty to develop a full and fair record for an unrepresented claimant; and 2) the ALJ failed to incorporate limitations from all the medically determinable impairments into the RFC and erred in not considering the combined impact thereof—notably leaving out limitations in concentration, persistence, and pace. [DE 16 at 5]. The Court only addresses the first argument, as it agrees that the ALJ did not develop a full and fair record for Mr. Hiatt, who was unrepresented, therefore requiring remand. The Court need not address the remaining argument, which will either be moot or can be addressed on remand.

In every case, an ALJ has a basic obligation to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). That duty is heightened when a claimant is unrepresented. "Where the disability benefits claimant is unassisted by counsel, the ALJ has a duty scrupulously and conscientiously to probe into, inquire of and explore for all of the relevant facts." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (internal quotations and alterations omitted). While pro se litigants are expected to provide some medical evidence to support their claim, the ALJ must "supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms*, 553 F.3d at 1098 (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (holding 700–page record inadequate because it lacked detail about certain impairments); *Thompson*, 933 F.2d at 587). An ALJ must also "be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Thompson*, 933 F.2d at 586 (internal quotations omitted).

The Seventh Circuit generally does not disturb a reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant is unrepresented. *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994); *Binion*, 13 F.3d at 246. Accordingly, "a significant omission is usually required before this court will find that the [Commissioner] failed to assist *pro se* claimants in developing the record fully and fairly." *Luna*, 22 F.3d at 692. And an omission is significant only if it is prejudicial. *See Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246. Instead a claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider. *Nelson*, 131 F.3d at 1235; *Binion*, 13 F.3d at 245 ("Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant."). Moreover, where the claimant appears without counsel and the ALJ fails to obtain a valid waiver of counsel, the burden shifts to the Commissioner to demonstrate that the ALJ adequately developed the record. *Skinner*, 478 F.3d at 842; *Binion*, 13 F.3d at 245.

The Commissioner argues that the ALJ "performed her duty to advise Plaintiff of his right to representation." [DE 17 at 9]. However, the Court finds that the ALJ did not obtain a valid waiver.  To obtain a valid waiver, an ALJ must explain to the claimant "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingent arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Thompson*, 933 F.2d at 584; *see also Skinner*, 478 F.3d at 841. Here, the ALJ explained to Mr. Hiatt that "a representative can present your evidence in a way that is most favorable to your case." (R. 211). She further explained that representation can help gather information, including medical and non-medical evidence. *Id.* The ALJ advised that

7

some legal service organizations provide legal representation free of charge if certain qualifying

criteria are met or for a fee if the ALJ approves it. *Id.* Mr. Hiatt was provided a referral list of

organizations and the ALJ offered to postpone the hearing to give him additional time to obtain

representation if he preferred. (R. 212). However, the ALJ did not inform Mr. Hiatt that the

limitation on attorney fees is capped at twenty-five percent of past-due benefits and approval by

the court is required. (R. 210–15). Nor did the form that Mr. Hiatt signed waving representation

inform him of this information. (R. 41–42). The form that Mr. Hiatt signed is similar to the

notice letter found invalid for omitting the required information that there is a twenty-five

percent cap on legal fees. *Young v. Apfel*, No. 3:98-CV-206-RP, 1999 WL 325026, at *7–8 (N.D.

Ind. May 19, 1999); *see also Binion*, 13 F.3d at 245 (waiver is invalid if the Secretary fails to

inform claimant of the three *Thompson* factors). The exchange between Mr. Hiatt and the ALJ as

well as the signed waiver form did not rise to the standard required for a valid waiver of

representation. (R. 210–15, 41–42). However, a finding of invalid waiver of counsel does not

end the inquiry because a claimant is entitled to remand only if the ALJ did not develop a full

and fair record. *Binion*, 13 F.3d at 245. If the ALJ does not obtain a valid waiver, on appeal, the

burden falls upon the Commissioner to demonstrate that the ALJ adequately developed the

record. *Id.*

   *Thompson* and *Binion* establish the boundaries in the Seventh Circuit for what constitutes

the development of a full and fair record for an unrepresented claimant. At one end of the

spectrum, the *Binion* court found an ALJ to have met the heightened standard when he obtained

all the medical and treatment records from the claimant's treating physicians as well as elicited

detailed testimony from the claimant in all relevant areas during the hearing. 13 F.3d at 245.

Alternatively, in *Thompson*, the court found both the written and testimonial record were

insufficient because the ALJ's questioning was "fatally superficial," failing to touch upon certain mental impairments, and the relevant medical records were outdated, which the ALJ failed to update. 933 F.2d at 586–87. Mr. Hiatt's case falls somewhere in the middle—the ALJ collected much of the relevant medical evidence but the questioning during the hearing was superficial, failing to adequately probe into the relevant evidence.

Here, Mr. Hiatt argues that the ALJ did not develop a full and fair written and testimonial record and because of such a significant omission, he was prejudiced. The Court first addresses the written record and finds that while the ALJ collected a good deal of medical evidence, gaps remain in the written record. At the time of the hearing, on August 30, 2017, the ALJ had medical records dated as late as October 2015 and she inquired as to where Mr. Hiatt had received healthcare since that date. (R. 210–15, 236). Based on that discussion, the ALJ gathered the following medical records for Mr. Hiatt: primary doctor (Ex. 21F); mental health treatment (Ex. 22F—December 1, 2015 through November 3, 2016); neurologist (Ex. 19F); chiropractor (Ex. 20F); and lab tests results. (Ex. 23F).

The Court acknowledges a "complete" record is always elusive and "there is no absolute requirement that an ALJ update the medical records to the time of the hearing," however Mr. Hiatt sent more records to be considered by the Commissioner. *Nelms*, 553 F.3d at 1099 (internal quotations and citations omitted). The Court in *Nelson* reasoned that a sufficient record was partially created by the claimant's ability to supplement her testimony with more specific information post-hearing, however, no such option was given to Mr. Hiatt during the hearing. *Nelson*, 131 F.3d at 1236. In *Binion*, the court indicated a factor against remand was that the plaintiff did not present new evidence before the Appeals Council, district court, or the Seventh Circuit. 13 F.3d at 246. Unlike in *Binion*, Mr. Hiatt presented new medical evidence to the

9

Appeals Council to supplement his record. (R. 2, 55). Mr. Hiatt sent records from the Bowen

Center to the Appeals Council dated August 26, 2015 through February 23, 2018 and March 2,

2018 through May 18, 2018.[1] In denying review of the ALJ's decision, the Appeals Council

stated that the records from August 2015 through February 2018 "do[] not show a reasonable

probability that it would change the outcome of the decision [and therefore the Appeals Council]

did not exhibit this evidence." (R. 2). While the Court cannot reverse the Commissioner's

decision solely based on this new evidence introduced, such evidence would weigh heavily in

determining whether a remand is necessary. *Binion*, 13 F.3d at 246. The record before the ALJ

therefore, has a gap of mental health treatment records from November 2016 through late

February 2018. What is missing from the record shows that Mr. Hiatt was "near catatonic," had

suicidal ideations (R. 129), "infrequent hallucinations" (R. 139), and had "fears of groups" (R.

147). Throughout these records, the therapist wrote that discharge from counseling would be

considered when Mr. Hiatt could manage "his own emotions without assistance." (*See, e.g.*, R.

139). The substance found in these records may not warrant a "sentence six"[2] remand, however,

their existence shows specific and significant facts that could have been uncovered by the ALJ

had she questioned Mr. Hiatt or had she provided Mr. Hiatt with the opportunity to supplement

the record post-hearing. Upon remand, a complete medical record, coupled with a more robust

testimonial record, discussed in detail below, will afford Mr. Hiatt with the full and fair record

required.

In addition to the gap in the written record, the Court finds the testimonial record

woefully incomplete. The majority of the ALJ's questioning of Mr. Hiatt at the hearing was

---

[1] The records dated March 2, 2018 through May 18, 2018 do not relate to the period at issue, therefore do not impact the decision from the ALJ, which was decided through February 28, 2018.

[2] The sixth sentence of 42 U.S.C. § 405(g) permits a court to remand a case if the claimant submits new and material evidence and shows good cause for failing to submit the evidence to the agency.

directed at determining what other medical evidence were not yet a part of the record. (R. 216–

19). In addition to those questions, the ALJ asked Mr. Hiatt about his previous employment

history and the amount of weight he lifted during those jobs. (R. 228–35). Finally, the ALJ

briefly asked Mr. Hiatt the extent of his interactions and care for his toddler daughter. (R. 229–

30). After Mrs. Hiatt testified, the ALJ did not ask her any questions regarding Mr. Hiatt's

impairments or degree of limitations. (R. 241). Although Mr. Hiatt did not offer specific

evidence that would have been elicited from a more thorough questioning, "the ALJ's failure to

properly develop the record negatively affected the fairness of the administrative process because

developing the record is what mitigates the harm from failing to obtain a valid waiver of

counsel." *Huffman v. Colvin*, No. 3:12-CV-00436-CAN, 2013 WL 6328693, at *5 (N.D. Ind.

Dec. 3, 2013).

     The transcript of the hearing indicates that the ALJ never inquired into Mr. Hiatt's

alleged mental and psychological impairments, other than to ask whether Mr. Hiatt currently

goes to counseling. (R. 236). Nor did the ALJ ask questions about his physical functional

limitations and how his chronic pain impacts Mr. Hiatt's ability to work. The standard requires

the ALJ to "probe[] the claimant for possible disabilities and uncover[] all of the relevant

evidence." *Binion*, 13 F.3d at 245. The ALJ fell far short of this standard. The ALJ did not ask,

for example, how long Mr. Hiatt could walk at a time before taking a break; how long he could

sit or stand; how frequent his "bad days" were; how intense, frequent or limiting were his

pseudo-seizures that prompted his treatment from a neurologist; whether he was in pain when he

lifted his daughter; how his concentration or attention limitations impacted getting tasks

accomplished or work done; what sorts of things typically triggered issues of PTSD; how often

he missed work; or how impactful and how persistence were his sleep limitations. Mr. Hiatt did

testify to how his chronic pain impacted some of his daily activities such as showering and cooking breakfast (R. 221), however, no further probe into his daily activities, aside from his interactions with his daughter, was made by the ALJ. Much of Mr. Hiatt's statement included how PTSD affects people generally, however, the ALJ did not attempt to explore into the personal impact that PTSD has on Mr. Hiatt. No clarification was made as to how often, if at all, Mr. Hiatt needed to use his cane, even if he no longer needed to use it "regularly" so long as he made his chiropractor visit every other week. (R 245). Further, the ALJ did not ask whether Mr. Hiatt took any medication to help treat any of his ailments and whether they were in fact helping.

These shortcomings demonstrate how the ALJ's questioning fell short of the thorough questioning considered sufficient in *Binion*. There, the ALJ "probed into all of the relevant areas, questioning plaintiff about the medical evidence in the file, her medication, pain, daily activities, and physical ability to perform a number of activities." *Binion*, 13 F.3d at 245. Conversely, in *Ferguson*, the ALJ asked one question regarding the frequency of one of the claimant's most serious limitations and no questions regarding the impact of the other significant limitation on his daily life, despite the claimant's brief references to some impact. *Ferguson v. Barnhart*, 67 F. App'x 360, 367 (7th Cir. 2003). Further, the ALJ asked if the claimant was taking anything for one of his ailments, and when the claimant answered vaguely, the ALJ did not probe further. The lack of questioning here is similar to, if not more insufficient, than the questioning in *Ferguson*.

This lack of questioning during the hearing proves prejudicial to Mr. Hiatt as the ALJ gave little weight to psychological consultative examination by Heath Fervida, Psy.D., performed in December 2015, because it was not supported by other evidence in the record. (R. 21). However, that record was not properly established. Dr. Fervida opined that Mr. Hiatt would likely experience difficulty in responding to others in a working environment and would need

support from others to accomplish his daily tasks. (R. 728). The ALJ stated this opinion on daily

activities was based entirely on the claimant's self-reported history and "there is no evidence in

the record to indicate his mental impairments cause the degree of limitation alleged." (R. 21). Dr.

Fervida stated in his opinion that Mr. Hiatt provided him with documents allegedly from Bowen

Center, where Mr. Hiatt received mental health treatments, however Dr. Fervida explained "there

was no letter head on them and they were not in the typical format that Bowen Center uses." (R.

727). However, Dr. Fervida explained that the minimal information and diagnosis on those

documents were consistent with his evaluation. *Id.* Not only was there record evidence of Mr.

Hiatt's mental impairments, as Dr. Fervida stated the Bowen Center records were consistent with

his evaluation, but additionally, the degree of limitation caused by his mental impairments could

have been further established by more thorough questioning during the hearing.

By way of another example, in her decision, the ALJ notes that Mr. Hiatt "reported that

his posttraumatic stress disorder symptoms can be triggered by innocuous sighs, sounds, or

smells causing flashbacks, panic attacks, and pseudo-seizures . . . [as well as] being hyper-

observant and constantly scanning for threats. Mental health treatment notes do show that the

claimant experiences anger and anxiety, but they do not support the level of limitations he

reports in his testimony." (R. 20). While the ALJ relies on Mr. Hiatt's testimony for the

limitations his alleged mental impairments have on him, the hearing transcript makes clear that

the ALJ did not ask Mr. Hiatt any questions regarding such limitations to develop a full and fair

record of what those limitations in fact are. To the extent that the ALJ may have found Mr.

Hiatt's prepared statement to overstate any limitation, no steps were made by the ALJ to clarify

the frequency or effect of any given limitation. Moreover, the ALJ's failure to probe Mr. Hiatt's

alleged disability is apparent as the RFC omits accommodations for Mr. Hiatt's mental

impairments. The RFC finds Mr. Hiatt capable to "respond appropriately to occasional interactions with coworkers, supervisors, and the general public." (R. 17).  Both psychological consulting evaluators opined that Mr. Hiatt would likely experience difficulty in responding to others in a working environment or social interactions. (R. 619, 727). Yet, the ALJ did not ask Mr. Hiatt about such a limitation and its impact on his ability to work. Such an omission is significant and without Mr. Hiatt's testimony, the record on his mental impairment and degree of limitation was not fully and fairly developed, thus prejudicing him.

Lastly, Mr. Hiatt argues that the ALJ did not ask the VE the necessary hypothetical questions that adequately represent his many limitations. [DE 16 at 20]. Mr. Hiatt also argues that the ALJ did not sufficiently probe the VE for her qualifications or how the VE came to the conclusions she did in her testimony. *Id.* at 20–21. However, the Court does not find either argument persuasive and if there were any error regarding this line of questioning, it was not prejudicial.

The Commissioner failed to meet his burden that the ALJ developed the record fully and fairly. At the very least, more thorough questioning of Mr. and Mrs. Hiatt would have been appropriate, however, the ALJ breached her duty to scrupulously and conscientiously probe into, inquire of, and explore for all of the relevant facts. *Binion*, 13 F.3d at 245. As a result, the ALJ did not have sufficient evidence as to the intensity, persistence, and limiting effects of Mr. Hiatt's symptoms and functional limitations. *Thompson*, 933 F.2d at 586–88 (finding that the ALJ failed to develop a full and fair record where he did not question the pro se claimant about his functional limitations). The absence of this evidence was highly relevant to a determination of his limitations and the RFC and therefore constitutes a significant omission and was prejudicial to Mr. Hiatt.  The Court finds that the ALJ failed to develop a full and fair record and

Mr. Hiatt was prejudiced by this error and therefore, it must remand this matter to the

Commissioner for further proceedings.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS

for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a

judgment for the Court's approval.

SO ORDERED.


ENTERED:  April 20, 2020

/s/ JON E. DEGUILIO
Judge
United States District Court
